No. 96-295

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


STATE OF MONTANA,

Plaintiff and Respondent,

v.

PEDRO MEDRANO,

Defendant and Appellant.



APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Diane G. Barz, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Brad L. Arndorfer, Arndorfer Law Firm,
Billings, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General;
Carol Schmidt, Assistant Attorney General;
Helena, Montana

Dennis Paxinos, Yellowstone County Attorney;
Dale Mrkich, Deputy County Attorney;
Billings, Montana



Submitted on Briefs: August 21, 1997

Decided:   October 10, 1997
Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

The defendant, Pedro Medrano, was charged with aggravated assault by information filed in the District Court for the Thirteenth Judicial District in Yellowstone County. Following trial by jury, he was convicted of the crime charged. Medrano appeals his conviction. We affirm the judgment of the District Court.

There are three issues on appeal:

1. Did the District Court err when it excluded evidence of the victim's prior conviction?

2. Was there sufficient evidence that Medrano was responsible for the blow which caused the victim serious bodily injury?

3. Did the District Court err when it allowed the jury to consider guilt by accountability?

FACTUAL BACKGROUND

On the evening of June 24, 1994, Ronald Jenness and his wife were driving their convertible automobile in downtown Billings; Ronald was the passenger. The Jennesses noticed two men in another vehicle "waving and hollering" at them. The Jennesses continued driving and the second vehicle, which was driven by Thomas Mollering, followed. When the two vehicles stopped alongside each other at a traffic light, Pedro Medrano, the passenger in the second vehicle, got out of the vehicle and approached the Jennesses.

As Medrano approached the vehicle, Ronald Jenness unbuckled his seat belt. Medrano then punched Jenness a number of times. Medrano asserted that he struck Jenness because he believed that Jenness was reaching for a weapon, although no evidence suggested the presence of a weapon. Medrano dragged Jenness from the vehicle, breaking the passenger window in the process, and continued to hit and kick him as he lay on the street. Mollering got out of the second vehicle and also began to hit and kick Jenness. Two other motorists eventually broke up the beating, and Medrano and Mollering fled the scene.

Jenness suffered several cuts and bruises, as well as a ruptured spleen, from the beating. After the Jennesses left the Montana Highway Patrol office, Jenness went to the hospital and that night had emergency surgery to remove his spleen.

On September 1, 1994, the Yellowstone County Attorney filed an information charging Medrano with aggravated assault pursuant to 45-5-202(1), MCA. At trial, Medrano contended that he was not responsible for Jenness's ruptured spleen because he did not strike Jenness in that area, and that he acted in self-defense because he believed Jenness had a weapon. After a three-day trial in February 1995, a jury found Medrano guilty of the crime charged.

ISSUE 1

Did the District Court err when it excluded evidence of the victim's prior conviction?

The standard of review of evidentiary rulings is whether the district court abused its discretion. See State v. Gollehon (1993), 262 Mont. 293, 301, 864 P.2d 1257, 1263. The determination of whether evidence is relevant and admissible is left to the sound discretion of the trial judge and will not be overturned absent a showing of abuse of discretion. See Gollehon, 262 Mont. at 301, 864 P.2d at 1263. See also State v. Stringer (1995), 271 Mont. 367, 374, 897 P.2d 1063, 1067; State v. Passama (1993), 261 Mont. 338, 341, 863 P.2d 378, 380; State v. Crist (1992), 253 Mont. 442, 445, 833 P.2d 1052, 1054.

Medrano contends that he should have been allowed to present evidence of a 1990 roadside incident involving Ronald Jenness, following which Jenness pled guilty to misdemeanor assault after attacking a couple in another vehicle. Prior to this trial, the District Court granted the State's motion in limine to exclude all evidence of the prior incident as irrelevant. During cross-examination of Jenness, however, the District Court decided "to eliminate the, you know, the granting of the Motion in Limine" and allowed an initial question about the incident before eventually sustaining the State's objection to the testimony for its lack of foundation.

Nothing in the record suggests that Medrano did not strike Jenness first. Nor is there any indication that Medrano was aware of Jenness's past violent history at the time of his confrontation with Jenness. Medrano's self-defense claim was not based on a claim that Jenness was the first aggressor or had a violent nature. His self-defense claim was based on Medrano's unsubstantiated belief that Jenness had a weapon, and Medrano's own background and fear of gang violence as a child in California. Without some evidence to indicate the relevance of Jenness's conviction, we conclude that the District Court did not abuse its discretion when it determined that Jenness's prior assault was not relevant to Medrano's self-defense claim or any other defense in this case.

## ISSUE 2

Was there sufficient evidence that Medrano was responsible for the blow which caused the victim serious bodily injury?

We review the sufficiency of the evidence to support a jury verdict to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See State v. Licht (1994), 266 Mont. 123, 131, 879 P.2d 670, 675 (citing State v. Lyons (1992), 254 Mont. 360, 363, 838 P.2d 397, 399). See also State v. Mergenthaler (1994), 263 Mont. 198, 203, 868 P.2d 560, 562.

Section 45-5-202(1), MCA, provides that "[a] person commits the offense of

aggravated assault if the person purposely or knowingly causes serious bodily injury to another." Section 45-2-101(64)(a)(ii), MCA, defines serious bodily injury as bodily injury that "creates serious permanent disfigurement or protracted loss or impairment of the function or process of any bodily member or organ."

Based on our review of the record, we conclude that substantial credible evidence supports the jury's finding that Medrano committed aggravated assault.

Medrano contends that he cannot be guilty of aggravated assault because there was no testimony that he struck Jenness in the area of the spleen. However, an eyewitness to the beating testified that Medrano was kicking and hitting Jenness "[b]etween the neck and the belt, in the mid area." In addition, the physician who treated Jenness stated that he could not know which of the blows suffered by Jenness--being dragged and dropped from the car or being hit and kicked--either alone or together, caused the injury to the spleen. The weight to be given a witness's testimony is up to the trier of fact. See State v. Santos (1995), 273 Mont. 125, 131, 902 P.2d 510, 514. We conclude that there was sufficient evidence that a rational trier of fact could have found the essential elements of aggravated assault beyond a reasonable doubt.

ISSUE 3

Did the District Court err when it allowed the jury to consider guilt by accountability?

We have held that the standard of review of jury instructions in criminal cases is "[w]hether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case." State v. Rothacher (1995), 272 Mont. 303, 306, 901 P.2d 82, 84. See also State v. Brandon (1994), 264 Mont. 231, 237, 870 P.2d 734, 737 (citing State v. Lundblade (1981), 191 Mont. 526, 529-30, 625 P.2d 545, 548).

Section 45-2-302, MCA, provides, in part, that:
A person is legally accountable for the conduct of another when:

(1) having a mental state described by the statute defining the offense, he causes another to perform the conduct, regardless of the legal capacity or mental state of the other person;

. . . .

(3) either before or during the commission of an offense with the purpose to promote or facilitate such commission, he solicits, aids, abets, agrees, or attempts to aid such other person in the planning or commission of the offense.

This Court recently discussed the need to plead accountability in State v. Tower (1994), 267 Mont. 63, 881 P.2d 1317 (4-3 decision) (Trieweiler, J., Gray, J., and Hunt, J., dissenting). There we held that the State is not required to set forth a theory of

accountability in the information in order to give the defendant fair notice of the nature and cause of the accusation against him.  We stated that "[i]n light of the defense's knowledge of the State's case, and the consistent history of the law of accountability in Montana, there was every reason to anticipate an accountability instruction."  Tower, 267 Mont. at 68, 881 P.2d at 1320.

Here, Medrano claims surprise and insufficient notice because the State did not raise accountability until trial.  Prior to trial, however, Medrano was aware that both he and his co-defendant, Mollering, were being held responsible for Jenness's injuries.  The information set forth the key language of the aggravated assault statute and alleged that both Mollering and Medrano struck Jenness and caused his injuries.  In addition, Medrano had knowledge of the State's case prior to trial.  Finally, since Tower, it is clear that accountability may be asserted by the State without having first asserted that basis for liability in the information.  Therefore, we conclude that Medrano had fair warning of the charges against him and "every reason to anticipate an accountability instruction."

Moreover, any surprise to Medrano from an accountability instruction was less likely than in Tower.  Medrano clearly hit and kicked Jenness, and the accountability instruction was offered only because no one could be certain about who of the two wrongdoers was guilty of inflicting the critical blow to Jenness's spleen.  The medical testimony could not confirm which of the many impacts suffered by Jenness caused his ruptured spleen, and thus, either or both Medrano and Mollering could have been responsible, jointly or individually.  In addition, there was separate evidence that Medrano had struck Jenness in the area of the spleen, which gave the jury sufficient grounds on which to convict Medrano independent of the accountability instruction.  Accordingly, we conclude that the District Court did not err when it gave a jury instruction on accountability, and we affirm the judgment of the District Court.

/S/  TERRY N. TRIEWEILER

We Concur:

/S/  J. A.  TURNAGE
/S/  JIM REGNIER
/S/  W. WILLIAM LEAPHART
/S/  WILLIAM E. HUNT, SR.