DA 09-0016

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 310N

STATE OF MONTANA,

      Plaintiff and Appellee,

v.

TIMOTHY RAY McNEFF,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Ninth Judicial District,
In and For the County of Glacier, Cause No. DC-2008-017
Honorable Laurie McKinnon, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Brad Aklestad, Aklestad Law Office, Shelby, Montana

      For Appellee:

          Hon. Steve Bullock, Montana Attorney General, Sheri K. Sprigg,
Assistant Attorney General, Helena, Montana

          Larry Epstein, Glacier County Attorney, Cut Bank, Montana

Submitted on Briefs:  August 12, 2009

Decided:  September 15, 2009

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Timothy Ray McNeff (McNeff) appeals the Ninth Judicial District Court's denial of his request for a jury instruction on the defense of compulsion. We affirm.

## ISSUE

¶3 Did the District Court abuse its discretion in refusing McNeff's request for a jury instruction on the defense of compulsion?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 In April 2008, an officer with the Bureau of Indian Affairs Law Enforcement (BIA) stopped McNeff for running a stop sign in Browning, Montana. It was readily apparent to the officer that McNeff and his two passengers were intoxicated. The officer requested backup and the Blackfeet Tribal Law Enforcement promptly responded. The BIA officer interviewed the passengers and checked them for weapons and found none, while the tribal officer conducted field sobriety tests on McNeff. McNeff failed the field tests and subsequent breath and blood tests indicated alcohol concentrations of .21 and .22 respectively.

2

¶5     McNeff was not a tribal member; therefore, the tribal officers requested that the Glacier County Sheriff's Department take custody of him.   Because multiple law enforcement agencies were involved in this arrest, the processing of McNeff's arrest took several hours and McNeff was in the presence of law enforcement officers for the entire time.   The Glacier County officer testified that McNeff admitted to having had several beers, several shots of whiskey, and some prescription medication.   McNeff was ultimately charged with driving under the influence as well as possession of drug-related paraphernalia and dangerous drugs.

¶6     At the omnibus hearing approximately one month after his arrest, McNeff asserted for the first time that he had been "carjacked."  He stated that he did not previously know his passengers, but had picked them up on the side of the road in Browning at approximately 1:30 in the afternoon on the day of his arrest.  He claimed that these two passengers, along with two or three other unidentified individuals who got out of his truck shortly before the traffic stop, carjacked him and forced him to drink alcohol until he was intoxicated and to drive them around for about seven hours prior to his arrest.  He professed that he feared for his life because one of the passengers had threatened him.

¶7     Acknowledging McNeff's claimed "compulsion" defense at trial, the State questioned each of the officers about whether McNeff had made these claims during the several hours it took to process his arrest.  Each officer testified that McNeff had not, at any time, told them about this alleged carjacking, that he felt threatened by his passengers, or that he was forced to consume alcohol.  McNeff testified at trial and maintained that he drove "under compulsion," but he also presented conflicting testimony

3

about the events of the afternoon. At the close of the evidence, the court and the attorneys convened to decide on jury instructions. McNeff presented an instruction on the compulsion defense. The District Court denied it, ruling that McNeff had not satisfied the statutory elements of the defense.

¶8 On October 17, 2008, a jury convicted McNeff of Driving or Being in Actual Control of a Motor Vehicle While Under the Influence of Alcohol, a Felony (fourth or subsequent offense) but concluded that he was not guilty of the drug-related charges. He was sentenced to 13 months "direct commitment" to the Montana Department of Corrections (DOC) to be served at a residential alcohol treatment program and 3 years to the DOC to run consecutive to the 13-month commitment. He appeals his conviction on the ground that the District Court abused it discretion in refusing his request for a jury instruction on the defense of compulsion. We review a district court's grant or refusal to submit jury instructions for an abuse of discretion. *State v. Nick*, 2009 MT 174, ¶ 8, 350 Mont. 533, 208 P.3d 864 (citation omitted).

¶9 Section 45-2-212, MCA, provides that "[a] person is not guilty of an offense, other than an offense punishable with death, by reason of conduct which he performs under the compulsion of threat or menace of the imminent infliction of death or serious bodily harm if he reasonably believes that death or serious bodily harm will be inflicted upon him if he does not perform such conduct." McNeff's testimony belies reliance on the compulsion defense. First, he voluntarily picked up the passengers. He then stated that he had to drink with his passengers because they threatened to pour, or did pour, alcohol on his new Stetson hat. Additionally, he testified that he believed his passengers wanted

4

to steal his truck. However, fear of damage to personal property is not an element of the compulsion defense. McNeff also testified as to one allegedly threatening comment during a 7-hour drinking and driving spree wherein his male passenger purportedly pushed a blunt object into his side and told him to drive if he wanted "to see tomorrow." As noted above, however, no weapons were found on either passenger or in the vehicle. Moreover, McNeff never reported a threat to any of the responding and arresting officers. Lastly, the evidence presented indicated that McNeff had one, if not more, opportunities to extricate himself from the situation. In sum, the totality of the evidence does not support a claim that he feared for his life if he did not comply with the requests of his passengers.

¶10  For these reasons, we conclude the District Court did not abuse its discretion in ruling that the evidence presented did not establish a reasonable belief by McNeff that he would suffer death or serious bodily harm if he failed to drink to intoxication and drive around with his passengers for 7 hours.

¶11  It is appropriate to decide this case pursuant to our Order of February 11, 2003, amending Section 1.3 of our 1996 Internal Operating Rules and providing for memorandum opinions. It is manifest on the face of McNeff's brief and the record before us that McNeff was not entitled to a jury instruction on the compulsion defense.

¶12  We affirm the judgment of the District Court.

/S/ PATRICIA O. COTTER

We concur:

/S/ MIKE McGRATH
/S/ JIM RICE
/S/ JOHN WARNER
/S/ BRIAN MORRIS