FILED

05/05/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0201

DA 25-0201

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2026 MT 97N

STATE OF MONTANA,

> Plaintiff and Appellee,

v.

DENNIS STEFFENS,

> Defendant and Appellant.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC-16-22-47-IN
Honorable Andrew Breuner, Presiding Judge

COUNSEL OF RECORD:

> For Appellant:
>
> Colin M. Stephens, Jordan R. Kilby, Stephens Brooke, P.C.,
> Missoula, Montana
>
> For Appellee:
>
> Austin Knudsen, Montana Attorney General, Roy Brown, Assistant
> Attorney General, Helena, Montana
>
> Audrey S. Cromwell, Gallatin County Attorney, Leigh Frattolillio,
> Deputy County Attorney, Bozeman, Montana

Submitted on Briefs:  February 11, 2026

Decided:  May 5, 2026

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion, shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Dennis Steffens appeals his conviction in the Eighteenth Judicial District Court, Gallatin County, for felony sexual assault in violation of § 45-5-502, MCA. Steffens requests plain error review of his claim that incorrect jury instructions on the requisite mental state violated his due process rights, alternatively claims that his counsel was ineffective for not seeking correct jury instructions, and argues that insufficient evidence of sexual contact supported his conviction. We affirm.

¶3 In 2022, the State charged Steffens with one count of felony sexual assault. The State alleged that Steffens subjected his niece, A.E., to sexual contact on multiple occasions between 2009 and 2013, when A.E. was less than fourteen years old, and when Steffens was at least three years older than A.E.

¶4 Trial commenced in August 2024. A.E. testified that Steffens touched her vaginal area and nipples when they played what Steffens called the "robot game." A.E. testified this began when she was around six or seven years old and continued until she was about ten. A.E. explained that unlike other games Steffens played with her and her older sister, Alison, the robot game occurred behind a closed door without anyone else present. A.E. testified that the game consisted of Steffens pulling down her pants and underwear, lifting

up her shirt, and repeatedly touching her vagina, nipples, and other body parts as if they were controls to a robot. A.E. testified that Steffens remained clothed and would narrate what body part he was touching. A.E. testified that Steffens played the robot game with her about three times during each of his annual weeklong visits to A.E.'s family's home. A.E. testified that Steffens told her that the robot game was "our special game" and "just you and me get to play this." A.E. testified that she did not question the game until she got older and realized why it made her uncomfortable. A.E. testified that when she was about ten years old, she told Steffens that she did not want to play the game, and it stopped.

¶5     A.E. testified that when she was approximately thirteen years old, she told Alison about the robot game. They decided to talk to their mother about it, and A.E. told their parents that something had happened with Steffens but did not provide much detail. Approximately three years later, in 2021, Alison reported Steffens's actions to law enforcement. Alison testified that because their parents had not taken action, she remained afraid for A.E.'s safety should Steffens visit the family.

¶6     Steffens denied A.E.'s allegations. He admitted to playing the robot game once, but described it differently:

> [STEFFENS:] . . . [A.E.] held up her arms and said, I'm a robot. And she kind of stumbled down the steps turned into the study and plopped on the air mattress and was acting like everything was stiff.
>
> .     .     .
>
> [STEFFENS:] So I made like I had an oil can and oil her joints and I moved around back and forth and pressed her belly button and she jumped up and ran away and I think after that we played cards.

3

Steffens testified that he used to babysit A.E. and her sister and give them baths. At closing, Steffens challenged A.E.'s credibility by suggesting that her memories had evolved and by pointing to her parents' failure to report the allegations to law enforcement.

¶7 When settling jury instructions, the District Court observed that the State's proposed instruction defining "purposely" was unnecessary given that the State was prosecuting Steffens for acting "knowingly." Defense counsel and the State agreed that no "purposely" instruction should be given. The State proposed instructions on the elements of sexual assault, including defining sexual contact. Steffens's counsel neither objected nor proposed alternative offense instructions. The District Court revisited the sexual contact instruction and suggested:

> THE COURT: . . . if we're going to stick with the knowingly state of mind, I think we need to remove "or purposely" from there, in order to knowingly arouse. Does that make sense? So that we're consistent with knowingly throughout.
>
> [STATE]: Yes, I agree.
>
> [DEFENSE COUNSEL]: It does make it more consistent, Judge. I agree with that.

As agreed by the parties and given by the District Court, Instruction No. 14 provided:

> "Sexual contact" means touching of the sexual or other intimate parts of the person of another, directly or through clothing, in order to knowingly[] arouse or gratify the sexual response or desire of either party.[1]

---

[1] The District Court adopted the State's proposed instruction, which used an abridged statutory definition of sexual contact that fit the State's prosecution theory focused exclusively on proving intent to arouse or gratify.

4

The District Court separately instructed the jury, "A person acts knowingly when he is aware of his conduct."

¶8 The jury found Steffens guilty of sexual assault.

¶9 This Court generally does not address issues raised for the first time on appeal. *State v. George*, 2020 MT 56, ¶ 4, 399 Mont. 173, 459 P.3d 854 (citing *State v. Hatfield*, 2018 MT 229, ¶ 15, 392 Mont. 509, 426 P.3d 569). However, we may discretionally "review unpreserved claims alleging errors implicating a criminal defendant's fundamental rights under the common law plain error doctrine." *George*, ¶ 4 (citing *State v. Akers*, 2017 MT 311, ¶ 13, 389 Mont. 531, 408 P.3d 142). Ineffective assistance of counsel (IAC) claims present mixed questions of law and fact, which we review de novo. *State v. Sawyer*, 2019 MT 93, ¶ 10, 395 Mont. 309, 439 P.3d 931. Claims that insufficient evidence supports a criminal conviction are reviewed de novo. *State v. McCoy*, 2021 MT 303, ¶ 25, 406 Mont. 375, 498 P.3d 1266. We review the record in the light most favorable to the prosecution to determine whether "any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *McCoy*, ¶ 25 (citation omitted). We consider whether sufficient evidence supports the verdict, not whether the evidence could have returned a different result. *State v. Sheehan*, 2017 MT 185, ¶ 17, 388 Mont. 220, 399 P.3d 314. Weighing evidence based on witness credibility and determining which version of events should prevail are within the province of the jury. *Sheehan*, ¶ 17.

¶10 Steffens requests that we exercise plain error review of his claim that improperly instructing the jury on an essential element of sexual assault violated his fundamental right

5

to due process. For the first time on appeal, Steffens argues that by removing the "purposely" mental state from the definition of sexual contact, the District Court lowered the State's burden of proof.

¶11 We employ the plain error doctrine "sparingly, on a case-by-case basis," considering the totality of the circumstances of each case. *George*, ¶ 5. The party seeking reversal of a claimed error must "firmly convinc[e]" this Court that (1) the claimed error implicates a fundamental right, and (2) failure to review the error would cause a manifest miscarriage of justice, leave unsettled the question of fundamental fairness of the trial, or compromise the integrity of the judicial process. *George*, ¶ 5 (citing *Akers*, ¶ 13). "A prerequisite to plain error review is that it be plain that there was error at trial." *State v. Tadewaldt*, 2010 MT 177, ¶ 20, 357 Mont. 208, 237 P.3d 1273 (citing *State v. Godfrey,* 2004 MT 197, ¶ 40, 322 Mont. 254, 95 P.3d 166).

¶12 Steffens has not demonstrated that the District Court's jury instructions reduced the State's burden of proof in a manner that implicates his right to due process. Steffens is correct that due process requires the State to prove, beyond a reasonable doubt, every factual element of a charged offense. *State v. Mills*, 2018 MT 254, ¶ 24, 393 Mont. 121, 428 P.3d 834. The State must prove that the defendant acted with the requisite criminal mental state applicable to each element. *Mills*, ¶ 24. Jury instructions must fully and fairly instruct the jury on the applicable law, including each element's requisite mental state. *State v. Rowe*, 2024 MT 37, ¶¶ 17, 32, 415 Mont. 280, 543 P.3d 614.

¶13 The offense of sexual assault occurs when a person "knowingly subjects another person to any sexual contact without consent." Section 45-5-502(1), MCA. The District Court correctly instructed the jury that to convict Steffens of sexual assault, the State must prove three elements beyond a reasonable doubt: (1) knowing mental state, (2) sexual contact, and (3) without consent.[2] By instructing the jury that "[a] person acts knowingly when he is aware of his conduct," the District Court correctly used the conduct-based definition of "knowingly" applicable to sexual assault offenses. *See Rowe*, ¶¶ 29, 31 (describing distinct conduct-based, result-based, and knowledge-of-fact definitions of "knowingly" articulated in § 45-2-101(35), MCA).

¶14 Steffens argues that the District Court lowered the level of criminal intent necessary to prove sexual contact by removing the word "purposely" from the statutory definition of the essential element given in Instruction No. 14. Section 45-2-101(67), MCA, defines "sexual contact" as:

> touching of the sexual or other intimate parts of the person of another, directly or through clothing, in order to knowingly or purposely:
>
> (a) cause bodily injury to or humiliate, harass, or degrade another; or
>
> (b) arouse or gratify the sexual response or desire of either party.

Steffens asserts that the words "in order to" evinces a requirement that to constitute sexual contact, the offender must act *purposely* to either "cause bodily injury . . . " or "arouse or

---

[2] Consent is ineffective if the victim is less than fourteen years old and the offender is three or more years older than the victim. Section 45-5-502(6)(a)(ii), MCA. The State and Steffens stipulated that at all times relevant to this case, A.E. was less than fourteen years old and Steffens was at least three years older than A.E.

gratify . . . either party." But the statute defines the requisite specific intent in the disjunctive: "in order to knowingly *or* purposely," § 45-2-101(67), MCA (emphasis added), indicating that either mental state suffices.

¶15 Steffens has not demonstrated that the jury was not fully and fairly instructed regarding the mental state applicable to the sexual contact element of sexual assault, at least in a manner that made it "plain that there was error at trial." *Tadewaldt*, ¶ 20. As given, Instruction No. 14 defined "sexual contact" as "touching of the sexual or other intimate parts of the person of another, directly or through clothing, in order to knowingly[] arouse or gratify the sexual response or desire of either party." The jury was instructed on one of the two alternative mental states necessary to prove sexual contact. Because Steffens has not "firmly convinc[ed]" us that any error implicated his fundamental right to due process, we decline to employ the plain error doctrine to address the District Court's sexual contact instruction. *George*, ¶ 5.

¶16 In the alternative, Steffens argues that he was denied effective assistance of counsel because his attorney failed to object to the purportedly erroneous sexual contact instruction and did not seek an instruction defining the requisite mental state as purposely. The State responds that Steffens's IAC claim is inappropriate for consideration on direct appeal because the record does not explain why defense counsel did not object or propose an alternate instruction.

¶17 Article II, Section 24, of the Montana Constitution and the Sixth and Fourteenth Amendments to the United States Constitution guarantee a defendant's right to effective

assistance of counsel in criminal prosecutions. *Sawyer*, ¶ 13. When an IAC claim is raised on direct appeal, we first consider whether it is based on a trial record that "adequately document[s] a challenged act or omission of defense counsel." *Sawyer*, ¶ 13 (quoting *Soraich v. State*, 2002 MT 187, ¶ 21, 311 Mont. 90, 53 P.3d 878). If the record "explains why counsel did not do something," we will address an IAC claim on direct appeal. *Sawyer*, ¶ 13 (quoting *State v. Robinson*, 2009 MT 170, ¶ 29, 350 Mont. 493, 208 P.3d 851). We may consider an IAC claim not based on the trial record if there is "no plausible justification" for counsel's inaction. *State v. Wittal*, 2019 MT 210, ¶ 13, 397 Mont. 155, 447 P.3d 1039.

¶18 Steffens acknowledges that the trial record does not explain defense counsel's failure to object or propose an alternate to the sexual contact instruction, but he argues that his counsel's inaction lacks any plausible justification. The record shows that defense counsel, the State, and the District Court agreed that the State's proposed instruction defining "purposely" as to sexual assault should not be given, as the State's theory of prosecution relied on a knowingly mental state. Defense counsel agreed to the State's proposed instruction on sexual contact and to the District Court's suggestion to remove the word "purposely" from it, to be consistent with the removal of "purposely" from the other instructions on the elements of sexual assault. Given that the statutory definition of sexual contact does not clearly require a purposely mental state, these are plausible justifications for defense counsel's lack of objection to Instruction No. 14. *See State v. Johnston*, 2010 MT 152, ¶¶ 12-16, 357 Mont. 46, 237 P.3d 70 (holding there was no plausible

9

justification for failure to object to erroneous knowingly definition in the particular context of obstructing a police officer when the "statute clearly requires more" and counsel had "nothing to lose" by seeking correct instruction). Because Steffens has not demonstrated that there was no plausible justification for counsel's inaction, we decline to consider Steffens's IAC claim on direct appeal. *See Wittal*, ¶ 13.

¶19 Steffens argues that insufficient evidence supports his conviction for sexual assault, because the State failed to prove beyond a reasonable doubt that his actions constituted sexual contact. He explains that none of the evidence presented could support an inference that he acted knowingly or purposely to sexually arouse or gratify either party.

¶20 To prove the sexual contact element of sexual assault, the State had to prove beyond a reasonable doubt that Steffens (1) touched A.E.'s sexual or other intimate parts, directly or through clothing; and (2) that he did so in order to knowingly arouse or gratify the sexual response or desire of either party. *See* § 45-2-101(67), MCA.

¶21 A.E.'s testimony provides sufficient evidence that Steffens touched A.E.'s sexual parts. *See State v. Duncan*, 2008 MT 148, ¶ 43, 343 Mont. 220, 183 P.3d 111 ("In a sex offense case, the conviction may be based solely on the uncorroborated testimony of the victim."). A.E. testified that Steffens directly touched her vaginal area and nipples; Steffens testified that he touched her belly button only. The jury evaluated A.E.'s and Steffens's credibility and weighed their conflicting testimony, and we will not disturb their credibility assessment of the respective parties. *See Sheehan*, ¶ 17.

10

¶22 Steffens argues that insufficient evidence supported the jury's inference that he touched A.E. with a criminally prohibited purpose. A defendant's "intent to gratify his sexual desire may be inferred from his conduct alone." *State v. Gerstner*, 2009 MT 303, ¶ 30, 353 Mont. 86, 219 P.3d 866 (collecting cases). We do not require direct evidence of sexual arousal. *Duncan*, ¶ 46. A.E. testified that approximately three times per year from when she was six or seven years old until she was ten, Steffens removed her clothing and underwear, touched her private parts while narrating his actions and smiling, and that he told her that it was their "special game." We have found that a jury could reasonably infer a defendant's intent to gratify his sexual desire from testimony describing less frequent and less overt conduct, even when the defendant denied touching the victim. *See, e.g.*, *Duncan*, ¶¶ 13-14, 46-48 (recognizing that jury may have inferred defendant's intent to gratify his sexual desire from his conduct when he "tickled" nine-year-old girl's "lower part," once over her swimsuit and once underneath, and when he touched a sleeping fifteen-year-old girl's chest underneath her shirt and bra); *State v. McLain*, 249 Mont. 242, 243-44, 246-47, 815 P.2d 147, 148-50 (1991) (holding that jury's inference of sexual gratification was reasonable from defendant's conduct when he pinched and stroked minor's private areas several times at conclusion of pillow fight among children and defendant). As in *Duncan* and *McLain*, a jury could reasonably infer from A.E.'s testimony that Steffens touched her with the intent to arouse or gratify his sexual desire or response.

¶23 Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that Steffens subjected A.E. to

11

sexual contact.  *See McCoy*, ¶ 25.  Sufficient evidence supported Steffens's conviction for sexual assault, as he does not contest the other essential elements.

¶24    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.  We affirm.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ LAURIE McKINNON
/S/ KATHERINE M. BIDEGARAY
/S/ BETH BAKER
/S/ INGRID GUSTAFSON